895 F.2d 949
 TAZCO, INCORPORATED; Old Republic Insurance Company, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAM, UNITED
STATES DEPARTMENT OF LABOR; Franklin Osborne, Respondents.
 No. 89-3230.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 31, 1989.
Decided Feb. 8, 1990.
 
 Mark E. Solomons (Richard L. Rennert, Arter & Hadden, Washington, D.C., on brief), for petitioners.
 Michael John Denney, Counsel for Appellate Litigation (Robert P. Davis, Sol. of Labor, New York City, Donald S. Shire, Associate Sol. for Black Lung Benefits, U.S. Dept. of Labor, Washington, D.C., on brief), for respondents.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and YOUNG, Senior District Judge for the District of Maryland, sitting by designation.
 WILKINSON, Circuit Judge:
 
 
 1
 The issue before us is whether a default award on a claim for black lung benefits entered by the Department of Labor against a coal mine operator may stand, where the insurance carrier liable for the claim received no notice of the pending adjudication. The Benefits Review Board held that the Department of Labor was only required to notify the responsible operator because the operator and the carrier are one entity for the purpose of notification.
 
 
 2
 We reverse.
 
 I.
 
 3
 On June 7, 1979, Franklin Osborne filed a claim for black lung benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. Secs. 901-945 (1982). The applicable claims procedures are found in certain incorporated provisions of the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. Secs. 901-950 (1982 & Supp. V 1987), as incorporated by 30 U.S.C. Sec. 932. The details of the claims procedures, including rules governing insurance contracts, are contained in regulations promulgated pursuant to the Black Lung Benefits Act by the Secretary of Labor. See 20 C.F.R. Secs. 725.1-726.213 (1989).
 
 
 4
 The Department of Labor ("DOL") issued a Notice of Initial Finding on May 21, 1980, indicating that Osborne had become totally disabled as of August 15, 1979, and identifying Tazco, Inc. as the operator potentially liable for the benefits. See 20 C.F.R. Secs. 725.410, 725.412. It required Tazco to except to the determination within 30 days or be deemed to have accepted the initial finding of entitlement and to have waived its right to contest the claim, absent good cause shown. See 20 C.F.R. Sec. 725.413. The Notice was sent to Tazco, but not to its insurance carrier, Old Republic Insurance Company. On July 2, 1980, the Department issued a default award of benefits in light of Tazco's failure to respond to the May 21 order.
 
 
 5
 Upon notification of the default award, Tazco contacted Old Republic, which on July 10, 1980, filed an answer on behalf of Tazco and itself controverting the claim. Old Republic also filed a motion contesting the default award on the ground that adequate notice had not been originally provided. The administrative law judge found that Tazco's reliance on the carrier to controvert the claim did not constitute good cause for its lack of timeliness and that the regulations do not require notification of the carrier. See 20 C.F.R. Secs. 725.412-13. The ALJ declined to entertain a due process challenge to the regulations on the grounds that the issue was beyond his jurisdiction. On August 25, 1987, the Benefits Review Board affirmed the decision of the ALJ. The Board denied Old Republic's request for reconsideration on January 3, 1989. This appeal followed.
 
 II.
 
 6
 We cannot accept the view of respondents that the insurance carrier is not entitled to separate notice of a claim if the coal mine operator has been notified. In "any proceeding which is to be accorded finality," due process requires that all interested parties receive notice "reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Failure to afford notice to an interested party violates "the most rudimentary demands of due process of law." Peralta v. Heights Medical Center Inc., 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988), quoting Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965). This court has found the guarantees of notice and an opportunity to be heard to be "[p]aramount among [constitutional] rights." Eakins v. Reed, 710 F.2d 184, 187 (4th Cir.1983).
 
 
 7
 In the instant case, a default award was entered on the claim for black lung benefits before Old Republic was notified that adjudication of the claim was even pending. The insurer had no opportunity to decide whether to "appear or default, acquiesce or contest," Mullane, 339 U.S. at 314, 70 S.Ct. at 657, because it first learned of the claim after entry of judgment. The law disfavors default judgments as a general matter, see Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir.1988), and especially where, as here, the defaulting party was in no way remiss in its response to the claim. Within eight days of receiving notification of the default award, Old Republic filed an answer controverting the claim on behalf of Tazco and itself. Old Republic also filed a "Motion to Permit Filing Notice of Contest" on the ground that it had never been notified of any claim. The carrier was, however, denied any opportunity for a hearing on the merits of the claim or on the issue of whether lack of notice constituted good cause for its failure to respond earlier.[1] 1]
 
 
 8
 We reject respondents' theory that notice provided to the operator may constitutionally be "imputed" to the carrier. If, as the Director argues, the carrier is not allowed to assert defenses unavailable to the operator, then the corollary is that it must be allowed to assert the defenses that are available, for which it will need notice. The DOL may not avoid its responsibility to afford due process by assuming that employers will notify their insurance carriers. We recognize, of course, that many contracts of insurance contemplate notification of the insurer by the insured. This fact, however, in no way displaces the due process obligation of the government to notify private parties of public proceedings which will subject them to liability under the law. The government will not be lightly heard to argue that due process may be made to depend upon the intermediate actions of third parties, especially those whose status is uncertain and whose effective obligations may be ended once their premiums are paid. Imputed notice in such cases may be but a legal fiction; in practice, imputed notice may result in no notice at all. By contrast, the constitution requires notice that is more than a "mere gesture." Mullane, 339 U.S. at 315, 70 S.Ct. at 657. Respondents fail to explain their failure simply to notify Old Republic directly, the method that would be employed by one who was "desirous of actually informing" the party liable for the claim. Id.
 
 III.
 
 9
 Respondents concede that Old Republic is a party in interest. The Secretary's own regulations include the insurance carrier in the list of parties that are entitled to participate in the adjudication of a claim for benefits. See 20 C.F.R. Sec. 725.360. In addition, claims provisions incorporated by reference into the Black Lung Benefits Act track the requirements of due process by providing for notification of the employer and "any other person ... whom the deputy commissioner considers an interested party." 33 U.S.C. Sec. 919(b). The regulatory notice provisions also contemplate that the carrier will be notified because they allow both the operator and the carrier to specify a designated agent to receive notice on their behalf. See 20 C.F.R. Sec. 725.413(c). Construed together, the statute and regulations clearly require that the insurance carrier receive notice of a claim for which it is potentially liable. See Warner Coal Co. v. Director, Office Workers' Compensation Programs, Dep't of Labor, 804 F.2d 346, 346-47 (6th Cir.1986). See also United States Casualty Co. v. Taylor, 64 F.2d 521, 525 (4th Cir.1933) (statutory scheme contemplates the right of the carrier to be heard in opposition to any claim).
 
 
 10
 The regulations properly identify the insurance carrier as a party in interest for the simple reason that the carrier takes on all the employer's responsibilities in connection with insured claims.[2] Once the carrier has reported the issuance of the policy, as mandated by the regulations, the insurer is fully liable for the obligations of the operator. See 20 C.F.R. Secs. 726.208-10. The carrier is required to discharge the statutory and regulatory duties imposed on the employer, thus stepping into its shoes. See 33 U.S.C. Sec. 935; 20 C.F.R. Sec. 726.207. See also Chapman v. Hoage, 296 U.S. 526, 528, 56 S.Ct. 333, 334, 80 L.Ed. 370 (1936); Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Spence, 591 F.2d 985, 987 (4th Cir.1979). Moreover, unlike an indemnification policy, the Black Lung Benefits scheme contemplates that the insurer, as a party, may be liable in the original claims proceeding. See Caudill Constr. Co. v. Abner, 878 F.2d 179, 181 (6th Cir.1989); Warner Coal, 804 F.2d at 347. Consequently, the carrier has the right to hire counsel, to determine whether to contest a claim, and to structure the defense. It would be anomalous if a statutory scheme that seeks to substitute the carrier for the operator was construed to eliminate that same carrier from participation by failing to require adequate notification.
 
 IV.
 
 11
 The Director argues that requiring the Department of Labor to notify the insurance carrier as well as the operator would unduly burden the Department. Such a complaint, of course, is unavailing as a constitutional matter: due process does not countenance "[e]xceptions in the name of necessity" to the basic rule "that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties." Mullane, 339 U.S. at 318, 70 S.Ct. at 123. In addition, however, the argument is factually suspect. The Department of Labor maintains a record of all policies issued by insurance carriers, who are required by regulation to file a report on each policy issued, cancelled, or renewed by them. See 20 C.F.R. Sec. 726.208. By contrast, coal companies that do not qualify as self-insurers may be small, unstable entities that slip in and out of existence. Here the manifestation of injury may arise long after the payment of premiums and indeed after the responsible operator has ceased to do business. Thus, the argument that it is more burdensome to locate the insurer than to locate the operator is, to say the least, problematic. Moreover, in practice the Department routinely sends notice to both the operator and the carrier. The Department's manual of procedure states that "[t]he operator's insurance carrier ... should also be sent [a copy] of the notification forms and evidence in file by certified mail." Coal Mine (BLBA) Procedure Manual, Chapter 2-801 p 7 (Feb. 1980). It appears that the only thing that prevented Old Republic from receiving notice here is some kind of simple oversight, which mysteriously ripened into a matter of bureaucratic principle.[3]
 
 V.
 
 12
 The Benefits Review Board was unmoved by the fact that in the similar case of Warner Coal Co. v. Director, Office Workers' Compensation Programs, Dep't of Labor, 804 F.2d 346 (6th Cir.1986), the Sixth Circuit declined to take the position urged by respondents here. The court held that both the Black Lung Benefits Act and regulations and the United States Constitution require that the insurance carrier receive notice prior to the administrative adjudication of a claim affecting the carrier's liability. Id. at 346-47. As a general matter, uniformity among the circuits in the context of a national benefits program is to be preferred. Such uniformity is especially appropriate where, as here, the Sixth Circuit was correct.
 
 VI.
 
 13
 The reversal of the default award as it applies to the insurer still leaves the question of whether the operator's default may be excused. Notwithstanding its failure to controvert, Tazco argues that it was justified in relying on the Department of Labor's longstanding practice of notifying insurance carriers, and in assuming that the carrier would take the necessary action. Moreover, it remains true that the insurer is contractually and legally obligated to pay if benefits are awarded. We hold, therefore, that failure of notice to the carrier requires the default award to be vacated as it affects the interests of both petitioners and an opportunity provided for petitioners to contest the merits of this claim.
 
 
 14
 REVERSED.
 
 
 
 [1]
 Although the DOL referred the case to the Office of Administrative Law Judges for a formal hearing, the Benefits Review Board determined on review that no hearing was ever conducted
 
 
 [2]
 The Black Lung Benefits Act requires that a coal mine operator either qualify as a self-insurer or purchase a standard workmen's compensation and employer's liability insurance policy with a "Federal Coal Mine Health and Safety Act Endorsement." 30 U.S.C. Sec. 933; 20 C.F.R. Secs. 726.1, 726.203 (1989). Only the larger, more stable companies are able to self-insure because of certain regulatory requirements including, inter alia, a minimum asset level, an administrative apparatus to service claims, and a minimum of three consecutive years in business and five full-time employees. See 20 C.F.R. Sec. 726.101
 
 
 [3]
 Respondents argue that Old Republic is not entitled to notice because the insurance form filed by it listed two companies in violation of DOL's requirement that separate forms be provided for each individual mine operator. As a result, DOL's filing system did not reveal that Old Republic was the insurer. We do not agree that Old Republic has waived its right to be notified by a simple administrative error. The necessary information was in fact provided to DOL in an understandable form. Moreover, the alleged error in reporting was apparent on the face of the document submitted by Old Republic. DOL compounded the problem by failing to assure that the information submitted to it was filed and cross-referenced appropriately. We obviously do not have before us a case where failure to give notice was due to the carrier's failure to file at all. Nor is this a case where the insurance carrier received actual notice from the operator